THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:09-CV-367-FL

| | |
|---|---|
| ILA P. WYNNE for <br> DARRELL W. PENNELL, <br><br> Plaintiff/Claimant, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner <br> of Social Security, <br><br> Defendant. | **MEMORANDUM AND** <br> **RECOMMENDATION** |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Ila P. Wynne ("Wynne") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) on behalf of her deceased grandson, Darrell W. Pennell ("Claimant"), seeking judicial review of the denial of Claimant's applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant filed applications for a period of disability, DIB and SSI on 10 January 2005, alleging disability beginning 1 June 2000. (R. 12). Both claims were denied initially and upon

reconsideration. (R. 26, 28, 47-49, 51-54). Claimant died on 6 September 2006, and on 5 October 2006, Wynne was substituted administratively as the proper party to the claim for benefits. (R. 59-60). A hearing before the Administrative Law Judge ("ALJ") was held on 23 October 2007, at which a non-attorney representative appeared and testified on Wynne's behalf. (R. 526-38). Wynne did not attend the hearing due to health reasons. (R. 12). On 17 November 2007, the ALJ issued a decision denying Claimant's request for benefits. (R. 9-20). On 12 June 2009, the Appeals Council denied Claimant's request for review. (R. 5-7). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d

2

585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate into his written

3

decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2); 416.920a(e)(2).

In this case, Claimant alleges the ALJ erred in finding that the severity of Claimant's mental deficiency does not meet or equal the requirements of Listing 12.05C. Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 5 ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 15). Next, the ALJ determined Claimant had the following severe impairments: alcohol abuse, liver disease, diabetes mellitus, disc disease, depression, knee arthritis and obesity. *Id.* The ALJ determined further that even if Claimant stopped the substance abuse, Claimant would continue to have a severe impairment or combination of impairments. (R. 17). At step three, the ALJ found these impairments, including the substance abuse disorder, were severe enough, either individually or in combination, to meet two of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04 (affective disorders) and 12.09 (substance addiction disorders). (R. 16-17). The ALJ found further, however, that Claimant would not meet any listing if he had discontinued his substance abuse. (R. 17).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant, absent substance abuse, had the ability to perform light work[1] that was simple, routine and

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

4

repetitive, not at production pace and allowed for the avoidance of hazards. (R. 17). In making this assessment, the ALJ found the statements by Claimant's representative concerning Claimant's limitations not fully credible. (R. 18). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work, regardless of his substance abuse. (R. 18). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined that absent substance abuse, Claimant was capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 21).

## II. Robert Davis' Testimony at the Administrative Hearing

Claimant died prior to the administrative hearing at age 33 and Wynne, the substituted claimant, did not appear at the hearing due to her health. (R. 528). However, Claimant's representative, Robert Davis ("Davis"), a disability claimant consultant, appeared and testified on Wynne's behalf. Davis explained Claimant had a sixth grade education and that Claimant worked as a laborer laying pipe and as a short-order cook where his duties included mopping the floor and washing dishes. (R. 530). Davis explained Claimant suffered from numerous medical conditions, including diabetes, liver problems, high blood pressure and anemia. (R. 531). Davis explained further that Claimant had "some problem with alcohol;" however, Claimant was not able to receive the necessary help to combat this problem due to a lack of financial resources. (R. 531). Finally, Davis testified that based on findings upon consultative examination and

---

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Claimant's IQ scores and school records, Claimant met Listing 12.05C (mental retardation). (R. 531).

### III. Vocational Expert's Testimony at the Administrative Hearing

Kimberly Engler testified as a VE at the administrative hearing. (R. 532-35). The VE testified that Claimant's past work as a short-order cook and a plumber's helper were semi-skilled occupations. Subsequently, the ALJ posed the following hypothetical:

> Assume a person of the same age, education and past work of [Claimant]. Further assume this hypothetical individual was confined to medium work, with the additional limitations that he could only work in a job that entailed simple, repetitive tasks, that was a non-production job. And he would have to avoid hazards . . . [W]ould there be jobs the [hypothetical individual] could perform?

(R. 533). The VE responded the individual could perform the following medium positions with a specific vocational preparation ("SVP") time of two and provided DOT classification citations along with the number of jobs available in the local and national economies: (1) grocery bagger - DOT 920.687-014 (4,000 locally, 250,000 nationally); (2) cleaner - DOT 381.687-022 (1,000 locally, 50,000 nationally); and (3) laundry laborer - DOT 361.687-018 (800 locally, 40,000 nationally). (R. 534). In response to whether light work would be available, assuming the other limitations provided in the first hypothetical, the VE responded the individual could perform the following jobs: (1) mail clerk - DOT 209.687-026 (1,000 locally, 50,000 nationally); (2) shipping and receiving weigher - DOT 222.387-074 (1,000 locally, 55,000 nationally); and (3) garmet sorter - DOT 222.687-014 (800 locally, 40,000 nationally). (R. 534). The VE testified further that a wide range of sedentary positions would also be available assuming the limitations provided in the first hypothetical. (R. 534). The VE testified further that the medium positions

6

required minimal reading while the light and sedentary positions require the ability to "identify short written words . . . [and] texts." (R. 535).

## DISCUSSION

I. **The ALJ's finding that Claimant's impairment did not meet or equal Listing 12.05 is not supported by substantial evidence.**

Claimant argues that the ALJ erred by finding that his impairment does not meet or equal Listing 12.05, the listing for mental retardation. Pl.'s Mem. at 8.

Claimant bears the burden of demonstrating that his impairments meet or equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). Listing 12.05 sets forth a two-part inquiry for determining whether a Claimant meets the requirements for mental retardation. *Shoulars v. Astrue*, 671 F. Supp. 2d 801 (E.D.N.C. 2009) (citing *Norris v. Astrue*, No. 7:07-CV-184-FL, 2008 U.S. Dist. LEXIS 92635, at *5, 2008 WL 4911794, at *3 (E.D.N.C. Nov. 14, 2008)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. First, a claimant must satisfy the diagnostic description of mental retardation, which requires a showing of "(1) significantly subaverage general intellectual functioning[2] (2) with deficits in adaptive functioning[3] (3) initially manifested during the developmental period;

---

[2] The phrase "significantly subaverage general intellectual functioning" appears also in the definition of mental retardation found in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), which the DSM-IV defines as "an IQ of about 70 or below." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 39 (4th ed. 1994).

[3] Listing 12.05 does not define "adaptive functioning." Regulations promulgated by the SSA provide that "[t]he definition of [mental retardation] . . . in [the] listings is consistent with, if not identical to, the definitions of [mental retardation] used by the leading professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01, at 20022 (April 24, 2002). Given "the SSA declined to adopt any one of [these] specific definitions, . . . the introductory paragraph of Listing 12.05 can be met if the individual is found to have, *inter alia*, deficits in adaptive functioning as defined by any of the [leading] professional organizations." *Durden v. Astrue*, 586 F. Supp. 2d 828, 834 (S.D. Tex. 2008).

7

i.e.... before age 22." *Shoulars*, 671 F. Supp. 2d at 814 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05). Upon making this showing, the claimant must then meet the required severity level of this disorder, which is accomplished by satisfying any one of four categories labeled (A)-(D) under § 12.05. *Id.* Claimant contends that he satisfies the mental retardation listing under category C ("Listing 12.05C"), which requires (1) a valid verbal, performance or full scale IQ of 60 through 70; and (2) another impairment, physical or mental, that imposes an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

While it is undisputed that Claimant satisfies the "C" criteria,[4] the issue is whether Claimant satisfies the first step (i.e., diagnostic definition) of the mental retardation listing analysis. *See Smith v. Barnhart*, 2005 WL 823751, at *4 (W.D. Va. 2005) (explaining "mental retardation is a life-long, and not acquired, disability[;] [t]hus, to qualify as disabled under this listing, a [claimant] must first demonstrate that he has had deficits in adaptive functioning that began during childhood"); *Justice v. Barnhart*, 431 F. Supp. 2d 617, 619 (W.D. Va. 2006) ("[E]ven if the record clearly establishes that [a claimant] meets the [severity] requirements of [Listing 12.05C], a finding of mental retardation cannot be warranted without a finding that

---

[4] As acknowledged by the ALJ, Claimant scored a verbal intelligence quotient ("IQ") of 67, performance IQ of 64 and a full scale IQ of 63 on the Weschsler Adult Intelligence Scale ("WAIS") test, administered by Dr. Miller. (R. 15, 435). Moreover, the ALJ found at step two that Claimant suffered from severe impairments which significantly limited his ability to perform basic work related functions. (R. 15); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A (explaining the "work-related limitation of function" requirement is satisfied when the claimant is determined to have a severe impairment at step two of the evaluation process) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)); *see also Luckey v. Dept. of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989) (explaining the second prong of Listing 12.05C is established by a finding that a claimant suffers from a "severe combination of impairments"). Additionally, the ALJ concluded at step four that Claimant was unable to perform his past relevant work. (R. 18); *see Flowers v. U.S. Dep't Health & Human Servs.*, 904 F.2d 211, 214 (4th Cir. 1990) ("In this circuit, we follow the rule that if a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the requirements of § [12.05C]").

[claimant] manifested deficits in adaptive functioning before age 22.") (citing *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)). Under the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), to be deemed mentally retarded one must have "significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002) (citing AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 41 (4th ed. 2000)).

Claimant contends his school records demonstrate sufficient evidence of adaptive deficiencies. Claimant received a seventh grade education only and repeated both third and sixth grades. (R. 475). His school performance reflects generally failing or near failing grades, with the exception of the second year of his repeated grades. (R. 475). Standardized test scores from the sixth and seventh grades indicate Claimant generally performed below grade level (R. 473, 475) and either at "slightly-below average" (R. 451, 453-54) or "well below-average" (R. 448-49, 451, 454) in reading, language, mathematics, spelling, science and social studies. Such evidence suggests Claimant demonstrated deficits in adaptive functioning in the "functional academic skills" area. *See e.g., Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (struggling in special education classes, having trouble with reading, writing and math, and dropping out of school in the ninth grade constituted evidence of mental retardation prior to age 22). With the exception of Claimant's education history, it is unclear whether Claimant suffered

9

Case 5:09-cv-00367-FL   Document 15   Filed 05/21/10   Page 9 of 13

from adaptive deficiencies in other functional areas,[5] as identified in DSM-IV, prior to age twenty-two and Claimant points to no such evidence.[6]

In considering Listing 12.05C, the ALJ limited his discussion to acknowledging Davis' allegation that Claimant met Listing 12.05C based upon his school records and I.Q. tests and noting Claimant "performed substantial gainful work activity as a plumber (sic) helper and short-order cook." (R. 18). In an earlier part of his decision, the ALJ accorded significant weight to the opinion of W. Jim Miller, Ph.D., a state agency examining consultant, that Claimant was capable of understanding, retaining and following simply instructions and "had found his niche and learned how to function at his own level." (R. 17, 435-36). However, it is unclear whether the ALJ actually engaged in the first step of the mental retardation listing analysis. *See Ragland v. Astrue*, No. 5:08-CV-152-D(2), 2009 U.S. Dist. LEXIS 55756, 2009 WL 1904530, at *6 (July 1, 2009) (remanding case because it was unclear whether the ALJ actually engaged in the first step of the analysis as he "d[id] not specifically mention the first 'diagnostic' step of the mental retardation analysis, and [instead] moved directly into a discussion of the second step of the

---

[5] An "Evaluation of Social & Personal Assets" was performed each school year wherein Claimant's teachers considered the following: cooperation, courtesy, dependability, industriousness, initiative, leadership, maturity, personal appearance and self-control. (R. 474). Claimant received a "C" in the majority of the categories for most school years; however, in seventh grade, Claimant received "Ds" in dependability, industriousness, leadership and self-control. *Id.* However, this evidence, which arguably describes Claimant's "social/interpersonal" and/or "self-direction" skill areas during his formative years, is not discussed in the ALJ's decision nor relied upon by Claimant or Defendant.

[6] Claimant references a SSA Third Party Daily Activities Questionnaire completed by Claimant's uncle, wherein the uncle indicated Claimant was capable of doing laundry, cleaning and washing dishes and can mow the lawn "some;" however, these various activities were "not [performed] very often." *See* Pl.'s Mem. at 10 n. 4 (citing R. 96). The uncle indicated further that Claimant was involved in no social activities. *Id.* While such evidence concerns the "home living" skill area, Claimant does not discuss whether deficits in this skill area existed during Claimant's formative years.

10

inquiry") (citing *Hansen v. Astrue*, No. 4:07-CV-24-WW, at 7 (E.D.N.C. Nov. 2, 2007) (noting that the ALJ did not specifically address the first step in the process of assessing mental retardation under Rule 12.05, and remanding for further proceedings)). While the ALJ's acknowledgment of Claimant's school records and work history[7] suggests that the ALJ considered Claimant's functioning in two skill areas, there is no other indication that the ALJ considered whether Claimant exhibited deficits in adaptive functioning during his formative years.

Defendant contends Claimant's grades and test scores do not constitute "strong enough evidence of adaptive functioning," noting the improvement in grades upon repeating third and sixth grades and the receipt of one "A" and two "Bs" in seventh grade.[8] Def.'s Mem. at 13. Furthermore, Defendant relies on findings by state agency non-examining consultant Marianne Breslin, M.D., that Claimant experienced mild restrictions in activities of daily living, moderate difficulties in maintaining social interaction and concentration, persistence or pace and one or two episodes of decompensation. Def.'s Mem. at 12; (R. 424, 431). The Court notes that while the ALJ "concur[ed] with the opinions of the State Agency medical consultants," it is not evident

---

[7] The court acknowledges that "work" is a skill area considered in evaluating whether a Claimant exhibits deficits in adaptive functioning and that Claimant was employed as a cook between the ages of 17 and 22. (R. 60, 67). It is not clear to what extent the ALJ relied on Claimant's work history, although the ALJ arguably placed great weight on Claimant's work history as it is the only evidence cited by the ALJ as contradicting the allegation of Claimant's representative that Claimant functioned in the mild range of mental retardation. *See* (R. 18). However, the fact an individual is able to work is not inconsistent with mild mental retardation. *See Luckey*, 890 F.2d at 669 (explaining "the Secretary may not rely upon previous work history to prove non-disability where the section 12.05(C) criteria are met") (citing *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987) ("When a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap")).

[8] The majority of Claimant's grades in seventh grade were Cs and Ds. (R. 475)

11

that the ALJ incorporated into his decision pertinent findings based on the "special technique" as required. *See* 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). In fact, the ALJ's opinion fails to indicate whether the ALJ applied this prescribed technique to evaluate the functional limitations of Claimant's mental impairments, a failure not acknowledged by the parties. This error alone warrants remand. *See Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (remanding case due to ALJ's failure to document claimant's condition in two functional areas); *Waters v. Astrue*, 495 F. Supp. 2d 512, 515 (D. Md. 2007) (holding failure to follow special technique warrants remand); *Witt v. Barnhart*, 446 F. Supp. 2d 886, 898 (N.D. Ill. 2006) (remanding case because "ALJ made no mention of the special technique, nor did he rate [claimant's] functional limitation in any of the areas required by the regulation").

Since it is not evident from the ALJ's decision as to whether the ALJ conducted the proper analysis in considering the first step of the mental retardation analysis, and given the existence of evidence suggesting Claimant suffered from deficits in adaptive functioning in the skill areas of "social/interpersonal" or "self-direction," the court cannot find the ALJ's opinion is supported by substantial evidence. *See O'Halloran v. Barnhart*, 328 F. Supp. 2d 388, 391 (W.D.N.Y. 2004) (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles.'")). Moreover, the rationale supporting the administrative decision provided by Defendant's briefing is not evident in the ALJ's decision and the Court may not speculate as to the reasoning applied by the ALJ. *See DeLoatche v. Heckler*,

12

715 F.2d 148, 150 (4th Cir. 1983) ("It may be . . . that the ALJ considered all of these factors and proposed to himself cogent reasons for disregarding them. However, on this record we cannot so determine. The Secretary must present us with findings and determinations sufficiently articulated to permit meaningful judicial review."). Accordingly, this matter should be remanded so that the ALJ can perform the required analysis pursuant to Listing 12.05C and to explain on the record how the evidence as a whole supports the decision. *See Ragland*, 2009 U.S. Dist. LEXIS 55756, 2009 WL 1904530, at *6.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be GRANTED, Defendant's Motion for Judgment on the Pleadings be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 21st day of May, 2010.

Robert B. Jones, Jr.
United States Magistrate Judge